**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| CARL ARNAL, *et al.*,            ) | **2:04-cv-1563 PHX JWS (LEAD)** |
|                        ) | **2:04-cv-539 TUC JWS** |
|         Plaintiffs,         ) | |
|                        ) | **(Consolidated)** |
| vs.                     ) | |
|                        ) | |
| TRAVELERS PROPERTY CASUALTY ) | **ORDER AND OPINION** |
| INSURANCE COMPANY, *et al.*,    ) | |
|                        ) | **[Re:   Motions at Docket Nos. 70,** |
|         Defendants.         ) | **71, 76, and 78]** |
| _____) | |
|                        ) | |
| NEWCASTLE REALTY LLC,        ) | |
|                        ) | |
|         Plaintiff,          ) | |
|                        ) | |
| vs.                     ) | |
|                        ) | |
| CARL ARNAL, *et al.*,           ) | |
|                        ) | |
|         Defendants.         ) | |
| _____) | |

## I.  MOTION PRESENTED

At docket 70, defendant Carl Arnal ("Arnal") requested an order directing plaintiff Newcastle Realty LLC ("Newcastle") to pay him the sum of $6,590.59 in attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d) and Rule 54.2 of the Local Rules of the United States District Court, District of Arizona.  At docket 71, Arnal requested an

order directing Travelers Property Casualty Insurance Company, *et al.* (collectively "Travelers") to pay him the sum of $118,167.19 in attorneys' fees.  At docket 76, Stephen Spitzer joined in Arnal's motion for attorneys' fees against Newcastle and requests an order directing Travelers to pay him the sum of $990 in attorneys' fees.  At docket 78, Stephen Spitzer filed an amended joinder in Arnal's motion for award of attorneys' fees against Travelers, requesting an order directing Travelers to pay him the sum of $3,250 in attorneys' fees.  At docket 81, Newcastle and Travelers filed a combined opposition to Arnal's motions and Spitzer's joinders.  At docket 84, Arnal and Spitzer filed a consolidated reply.  Oral argument was requested, but it would not assist the court.

## II.  BACKGROUND

This dispute involves two separate cases which were consolidated by court order.  Both cases arise from an adjuster's authorization agreement dated February 17, 1999, between Carl Arnal doing business as the Consortium of Public Adjusters and Newcastle, in which Newcastle retained Arnal to adjust an insurance claim related to damages incurred at an apartment complex called "The Fountains" in Sun City, Arizona.

The adjuster's authorization agreement states in pertinent part that Newcastle agrees "to pay and hereby assign and direct payment to [Arnal], a fee equal to fifteen percent (15%) of any monies received...when adjusted with the Insurance Companies, or otherwise recovered."[1]  At the time of the loss, Newcastle had commercial property insurance coverage on "The Fountains" through Travelers.

---

[1]Findings of Fact at 1-2, doc. 67.

On March 22, 1999, Arnal sent Travelers a letter, stating that "Public Adjusters Inc., holds a legal assignment of a portion of the proceeds arising out of [Newcastle's] claim" in consideration for services rendered in the adjustment of the claim, and demanding Travelers "to include the name of Public Adjusters Inc., as payee on any and all drafts and/or checks issued in payment of this claim."[2]  On September 2, 1999, Travelers issued a check in the amount of $1,136.47, payable to "Newcastle Realty L.C.C. [sic] and Public Adjusters."  On September 28, 1999, Travelers issued a check in the amount of $333.53, payable to "New Castle Realty LCC & Public Adjusters LLC."  On October 26, 1999, Travelers issued a check in the amount of $224,474.37, payable to "New Castle Realty LLC and The Fountains and Fleet National Bank of New York and Public Adjusters LLC."[3]

By letter dated February 29, 2000, Newcastle terminated the adjuster's authorization agreement with Arnal.[4]  The letter stated that the adjustment of Newcastle's claim had failed to yield enough money to sufficiently restore the damaged property and that Newcastle had decided to "go to court" to enforce the policy.  In a letter to Travelers dated March 6, 2000, Arnal acknowledged that Newcastle had terminated his services as an adjuster, but stated that "while we can be dismissed from services we have a valid lien and assignment, which Travelers acknowledged notice of when we commenced our adjusting activity on this file."[5]

---

[2]Doc. 67 at 2.

[3]*Id.*

[4]*Id.* at 3.

[5]*Id.*

In February 2000, Newcastle filed suit against Travelers, alleging claims for property damage, loss of rents, and insurance bad faith arising out of Travelers' actions with respect to Newcastle's insurance claim.[6]  On August 15, 2002, Newcastle and Travelers entered into a settlement agreement and release, in which Travelers agreed to pay Newcastle $2,250,000, and Newcastle agreed to dismiss its pending suit and release all claims against Travelers.  Newcastle also agreed to indemnify Travelers in the event Arnal made a claim or brought suit against Travelers "for payment of a purported lien allegedly arising from Arnal's agreement to provide adjusting services to Newcastle."[7]

On February 4, 2004, Carl Arnal and Berk & Moskowitz, P.C., entered into an attorney-client agreement which provided for attorneys' fees based on "an hourly component and a contingency fee component."  The agreement provided for a reduced hourly rate of $100.00 for both senior and associate attorneys.  In addition to the reduced hourly rates, the agreement also provided for a contingency fee of "twenty percent (20%) of the total amount recovered."[8]  On June 30, 2004, Stephen Spitzer and his counsel, Paul Weich, also entered a "hybrid hourly and contingent fee" agreement, based on an hourly rate of $100 and "20% of any recovery (in addition to reimbursement for any court costs)."[9]

---

[6]Case No. CIV 00-0344 PHX RCB, *Newcastle Realty, LLC, et al. v. The Travelers Indemnity Company of Illinois, et al.*

[7]Doc. 67 at 3.

[8]Doc. 71, exh. B at 3.

[9]Attorney-Client Fee Contract at 1-2, doc. 74.

In July 2004, Arnal filed a complaint against Travelers, alleging that Travelers is liable to Arnal for fifteen percent of all monies Travelers paid to Newcastle.[10]  The Arnal complaint further alleges that Arnal transferred his rights to the fifteen percent assignment to Stephen Spitzer in October 2002, and that in June 2004, Spitzer assigned back to Arnal twenty percent of Arnal's original rights under the first assignment.  The complaint also alleges that, despite having knowledge of the first and/or second assignment, Travelers entered a settlement agreement with Newcastle in which Travelers paid a sum to Newcastle without honoring the contract provision assigning Arnal fifteen percent of those monies.

In October 2004, Newcastle filed a complaint against Arnal, alleging that Arnal failed to perform under the contract, and that as a result of Arnal's breach of contract, Newcastle terminated the contract with Arnal in February 2000.[11]  The complaint further alleges that Newcastle and Travelers entered a settlement agreement, which provided in part that Newcastle would indemnify Travelers for any claim by Arnal against Travelers arising out of the contract between Arnal and Newcastle.  Count I of the Newcastle complaint seeks a declaratory judgment that the Arnal defendants "are not entitled to recover any additional sums from [Newcastle], Travelers or any other person under the Agreement between [Newcastle] and Defendant Arnal."[12]  Count II alleges that "Defendant Arnal breached the Agreement with Newcastle by failing to pay the fees

---

[10]Case No. CIV 04-1563 PHX JWS, *Arnal, et al. v. Travelers Property Casualty Insurance Company, et al.*

[11]Case No. CIV 04-0539 TUC JWS, *Newcastle Realty LLC v. Arnal, et al.*

[12]Doc. 1 at 5, CIV 04-0539 TUC JWS.

of all accountants, professionals and experts necessary to enable Newcastle to recover its losses under the Policies," fees which Newcastle alleges amount to no less than $337,500.[13]

The court consolidated the two cases by order dated January 27, 2005.[14]  The Arnal defendants filed a motion to dismiss the Newcastle complaint.[15]  By order dated May 11, 2005, the court dismissed Newcastle's breach of contract claim against Arnal.[16]  By order dated October 20, 2005,[17] the court dismissed Newcastle's claim for declaratory relief against Arnal, on the grounds that a declaratory judgment remedy is inappropriate here because the parties have already sought coercive relief on the issue of whether Travelers, and in turn Newcastle as Traveler's indemnitor, may be held liable to the Arnal defendants.[18]

Arnal subsequently moved for summary judgment on the claim that "Travelers breached its obligations to Arnal arising out of an assignment from New Castle to Arnal."[19]  Travelers cross-moved for summary judgment dismissing Arnal's claim against

---

[13]*Id.* at 6.

[14]Doc. 12.

[15]Doc. 8 in CIV 04-0539 TUC JWS.

[16]Doc. 15.

[17]Doc. 34.

[18]*Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (citations omitted) ("A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party who could sue for coercive relief has not yet done so.")

[19]Motion at 2, doc. 35.

Travelers.[20]  By order dated April 11, 2006, the court denied the parties' cross motions for summary judgment.[21]  The case proceeded to trial.

After a bench trial on January 18, 2007, the court ruled in Arnal's favor.  The court concluded it was Newcastle's intent to assign Arnal "(15%) of any monies received ... when adjusted with the Insurance Companies, or otherwise recovered."[22]  The court further ruled that the Travelers defendants are therefore liable to Arnal for $337,500, plus prejudgment interest accruing at 10% since August 15, 2002, the date Travelers settled with Newcastle for $2.25 million and agreed not to pay Arnal his assigned interest."[23]  Arnal and Spitzer now move for an award of attorneys' fees against Travelers and Newcastle.

## III.  DISCUSSION

Pursuant to Arizona Revised Statute § 12-341.01(A), Arnal requests an award of $6,590.59 in hourly fees against Newcastle and an award of $118,167.19 in both hourly and contingent fees against Travelers.  Arnal submits that the $118,167.19 in fees sought against Travelers "is based on hourly fees, plus 20% of $486,562.50, which is comprised of the award of $337,500 plus 10% interest accruing since August 15, 2002 through January 31, 2007."[24]

---

[20]Doc. 39.

[21]Doc. 44.

[22]Doc. 67 at 5.

[23]Doc. 67 at 5-6.

[24]Doc. 71 at 1-2 n.1.

Spitzer requests an award of $990 in hourly fees against Newcastle, and $3,250 in hourly fees against Travelers.  In his amended joinder, Spitzer represents that although Arnal and Spitzer's separate attorney-client retainer agreements are both based on "a hybrid structure of 20% of the total recovery plus an hourly rate of $100.00," Arnal and Spitzer seek only one twenty percent contingency fee recovery against Travelers, which the parties will divide among themselves in accordance with ER 1.5(e).[25]

Pursuant to A.R.S. § 12-341.01(A), "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."  The purpose of an award under A.R.S. § 12-341.01(A) is to "mitigate the burden of the expense of litigation to establish a just claim or a just defense."[26]  Fees awarded under the statute "need not equal or relate to the attorney fees actually paid or contracted, but...may not exceed the amount paid or agreed to be paid."[27]  Here, it is undisputed that this matter arose out of a contract and that Arnal and Spitzer are the "successful" parties.

---

[25]Doc. 78 at 2.  Spitzer's amended joinder states in pertinent part:

> The basis for amending this Joinder is that the Plaintiffs wish to make it clear that - although both separate Attorney Client Retainer Agreements call for a hybrid structure of 20% of the total recovery plus an hourly rate of $100.00 - they seek only one 20% contingent fee recovery.  Therefore, this Joinder is amended to request the hourly fees for the work done on behalf of Mr. Spitzer.  (Undersigned counsel and counsel for co-Plaintiff will separately divide the contingency portion of the attorneys fees award in accordance with ER 1.5(e).)

[26]A.R.S. § 12-341.01(B); *Building Innovation Industries, L.L.C. v. Onken*, 2007 WL 158737, *7 (D. Ariz. 2007).

[27]A.R.S. § 12-341.01(B).

The Arizona Supreme Court has enumerated six factors the trial court should consider in determining whether to award attorneys' fees under § 12-341.01(A) once eligibility has been established:

> (1) whether the unsuccessful party's claim or defense was meritorious;
> (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the result; (3) whether assessing fees against the unsuccessful party would cause extreme hardship; (4) whether the successful party prevailed with respect to all of the relief sought, (5) whether the legal question presented was novel and whether such claim or defense have previously been adjudicated in this jurisdiction; and (6) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees.[28]

Newcastle and Travelers oppose Arnal and Spitzer's motions for attorneys' fees on the grounds that 1) factors two, five, and six of *Wagenseller* "weigh heavily" in favor of Travelers and Newcastle, and 2) Arnal and Spitzer have failed to show the reasonableness of the requested fees according to the standards set forth in *Schweiger v. China Doll Restaurant, Inc.*[29]

The court first considers whether Arnal and Spitzer are entitled to an award of attorneys' fees based on the six factors set forth in *Wagenseller*.  Travelers and Newcastle did not address the first, third, and fourth factors in their briefing.  Based on its review of the record, the court finds that the above three factors weigh in favor of Arnal and Spitzer.  Travelers' defense was not meritorious, nor were Newcastle's claims. There is no evidence that assessing fees against Travelers and Newcastle

---

[28]*Wagenseller v. Scottsdale Memorial Hospital*, 710 P.2d 1025, 1049-1050 (Ariz. 1985).

[29]673 P.2d 927 (Ariz. App. 1983).

would cause an undue hardship, and Arnal and Spitzer prevailed with respect to the relief sought.

The second factor, whether the litigation could have been avoided or settled, also weighs in favor of Arnal and Spitzer.  Travelers and Newcastle could have avoided this litigation by honoring the assignment set forth in the adjuster's authorization agreement and paying Arnal "(15%) of any monies received ... when adjusted with the Insurance Companies, or otherwise recovered."[30]  Moreover, Arnal also attempted to settle this matter with Travelers in May 2005 for the same amount which he was ultimately awarded at trial, minus interest and all of his attorneys' fees and costs.[31]

The fifth factor also weighs in favor of Arnal and Spitzer: the legal question presented in this matter was not novel and has been previously adjudicated in this jurisdiction.  Finally, the sixth factor favors Arnal and Spitzer because an award of attorneys' fees in this action will encourage parties with tenable claims to litigate legitimate contract issues, and will discourage obligors such as Travelers and Newcastle from refusing to honor valid assignments after receiving notice of such assignments.  After considering all of the above factors, the court finds that Arnal and Spitzer are entitled to an award of attorneys' fees.

The court next considers the reasonableness of the requested fees.  Arnal and Spitzer contend that the attorneys' fees they are seeking are reasonable based on the factors set forth in Local Rule 54.2(c)(3).  In support of his motion, Arnal attaches a

---

[30]Doc. 67 at 5.

[31]Doc. 71 at 3.

memorandum discussing the factors in Local Rule 54.2(c)(3), and a statement of consultation.  In addition, Arnal and Spitzer provide copies of the fee agreements, "task-based itemized statement[s] of time expended and expenses incurred," and affidavits of moving counsel as is required under Local Rule 54.2(d).

Arnal and Spitzer also argue that their fee requests are reasonable based on the standards set forth in *China Doll*.  Arnal and Spitzer specially contend that they have attached documentation identifying the legal services performed, the attorney who performed the services, and the date on which the services were provided.[32]  In addition they attached their attorney-client fee agreements and identified the billing methods employed by their counsel.

Newcastle and Travelers do not contest the hybrid fee agreements at issue, nor the number of hours expended by Arnal and Spitzer's counsel in this matter.  Rather, Newcastle and Travelers contend that  "[u]tilizing a 20% contingency of the $118,167.19 in total attorneys' fees that Arnal is claiming against Travelers, it appears that Arnal is requesting $20,854.69 in attorneys' fees for hourly billable work and $97,312.50 for the contingency," and "[u]sing this extrapolation to calculate the total number of billable hours at a rate of $100 per hour, Arnal is requesting a total fee award in excess of $500 per billable hour."[33]

It is unclear how Travelers and Newcastle arrived at the above estimate.  Based on the billing summaries provided by counsel and the court's review, it appears that

---

[32]*China Doll*, 673 P.2d at 933.

[33]Doc. 81 at 5.

counsel for Arnal and Spitzer have expended a combined total of at least 460 hours in litigating this matter.  Dividing the total sum of $128,997.78 requested in attorneys' fees by the 460 hours expended produces an estimated hourly rate of $280, which is slightly more than the hourly fees generally charged by counsel for Arnal and Spitzer.

On the other hand, applying a typical thirty-three percent contingent fee to the total amount recovered in this matter, which Arnal indicates is $486,562.50 and Newcastle and Travelers do not dispute, would produce an attorneys' fee award of approximately $160,565, which is significantly more than the total amount of attorneys' fees requested herein.  Because counsel for Spitzer and Arnal assumed less risk under their hybrid hourly and contingent fee agreements than they would have under a straight contingency fee agreement, it is reasonable that counsel receive less attorneys' fees than they would have under a typical contingency fee agreement.

Based on the factors set forth in Rule 54.2, Local Rules of the United States District Court, District of Arizona, and *China Doll* and for the reasons stated above, the court finds the attorneys' fees requested by Arnal and Spitzer to be reasonable.

## IV.  CONCLUSION

For the reasons set out above, Arnal's motion at docket 70 for an award of attorneys' fees against Newcastle is **GRANTED**; Arnal's motion at docket 71 for an award of attorneys' fees against Travelers is **GRANTED**; Spitzer's joinder at docket 76 for an award of attorneys' fees against Newcastle is **GRANTED**; and Spitzer's amended joinder at docket 78 for an award of attorneys' fees against Travelers is **GRANTED**.

It is further **ORDERED** that Newcastle is directed to pay Arnal the sum of $6,590.59 in attorneys' fees, and to pay Spitzer the sum of $990 in attorneys' fees. Travelers is directed to pay Spitzer the sum of $3,250 in attorneys' fees, and to pay Arnal the sum of $118,167.19 in attorneys' fees.  Arnal and Spitzer shall divide the contingency fee portion of the $118,167.19 in accordance with ER 1.5(e) as indicated in the Amended Joinder of Motion for Award of Attorneys' Fees Against the Travelers Defendants (doc. 78).

DATED at Anchorage, Alaska, this 14th day of May 2007.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE